IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KRISTA SUBLETT,

     Plaintiff,

v.                                                    CASE NO. 1:20-cv-128-AW-GRJ

LANDSHARK GROUP, INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Final Judgment.
ECF No. 32.  The district judge referred this case to the undersigned to
conduct any necessary hearings and issue a report and recommendation.
ECF No. 26.  After the Clerk's entry of default against Defendant, ECF No.
29, the Court held an evidentiary hearing to determine what damages, if
any, may be awarded if a default judgment was warranted.  Upon careful
consideration, and after conducting an evidentiary hearing, the undersigned
respectfully recommends that Plaintiff's Motion for Final Judgment, ECF
No. 32, be granted.

## I.    PROCEDURAL BACKGROUND

Plaintiff initiated this case on June 2, 2020, when she filed a
complaint against Defendant, her former employer, for alleged violations of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et seq*.  ECF No. 1.  In her Amended Complaint, Plaintiff alleges claims for a hostile work environment and for retaliation.  ECF No. 13.

After Defendant filed an answer to Plaintiff's Amended Complaint, ECF No. 15, its counsel moved to withdraw from the case, ECF No. 21. Plaintiff submitted a limited objection, ECF No. 22, but the Court granted the motion to withdraw on January 7, 2021, ECF No. 24.  In doing so, the Court advised Defendant—a corporation prohibited from proceeding *pro se*—that it had 30 days to retain new counsel and that failure to do so may result in the entry of a default judgment upon Plaintiff's motion.  *Id.* at 2. Counsel did not appear on behalf of Defendant. Consequently, Plaintiff filed her Motion for Entry of Default Judgment on February 9, 2021, seeking damages and attorney's fees. ECF No. 27.

On April 12, 2021, the Court granted Plaintiff's Motion for Clerk's Default, and the Clerk entered a default against Defendant. ECF Nos. 28 and 29. On May 18, 2021, Plaintiff filed a Motion for Final Judgment.  ECF No. 32. The Court then scheduled an evidentiary hearing to determine the amount of damages to be awarded Plaintiff should a default judgment be granted.  ECF No. 33.  The Court ordered Plaintiff to send to Defendant by

2

certified mail (return receipt requested) a copy of its order setting forth the date and time of the hearing and to file the return receipt with the Court. *Id.* at 2. On May 29, 2021, Plaintiff filed a *Notice of Filing with Certified Mail Sent for August 4, 2021 Hearing at 2 pm to Defendant*. ECF No. 37.

The Court conducted an evidentiary hearing on August 4, 2021, during which Plaintiff and another witness testified as to her injuries and damages, providing factual support for her claims.[1] *See* ECF No. 39. Defendant failed to appear at the hearing. On August 19, 2021, Plaintiff filed her post-hearing amended affidavit in support of an award of attorney's fees. ECF No. 42. In the Amended Declaration, Plaintiff seeks an award of $5,252.50 in attorneys' fees. ECF No. 42 at 2. Defendant has failed to appear or otherwise participate in this case after its counsel withdrew on January 7, 2021.

## II.    FACTS

Defendant Landshark Group, Inc. hired Plaintiff as a bartender and bar manager on January 1, 2020, at a rate of pay of $8.05/hour. Tr. at 6-7.

---

[1] During the evidentiary hearing, the Court raised the issue of why this action was filed in the Gainesville and not Pensacola Division, Tr. at 23-24, in view of the fact that the Defendant and the Plaintiff are both located in the Pensacola Division and the conduct alleged in the Complaint occurred there. Because venue is proper in the Northern District of Florida, even though the case should have been filed in Pensacola, the Court concludes that it would waste judicial resources to transfer the case to Pensacola at this late stage in the litigation.

With tips, Plaintiff earned approximately $250-300 per night, five nights a week (roughly $1,500 per week).  Tr. at 7-8.  During her employment, a male manager (who is also an owner) subjected Plaintiff to constant inappropriate sexual remarks:

> He would tell me that I looked really sexy every time I come in, or he would tell me that I needed to wear more provocative clothing, I needed to show my breasts more, . . . that he was going to have me wear black chaps so everyone could see my behind. Just comments like that.

Tr. at 10.  According to a co-worker, the manager was always making "nasty" comments to female employees along the lines of "how sexy they were looking." Tr. at 32.

Plaintiff testified that on February 23, 2020, this same manager grabbed Plaintiff's buttocks and groped her breast when they were alone together in the beer cooler.  Tr. at 8.  In response, Plaintiff dropped a case of beer she was carrying, yelled at him that she is "not someone you can just touch", and stormed off crying.  Tr. at 8-9.  The manager just laughed at her.  Tr. at 9.  That afternoon, a co-worker saw Plaintiff covered in beer, upset and angry.  Tr. at 29.  The co-worker asked Plaintiff if she was okay, and Plaintiff said that the manager "had touched her, like touched her breast and her butt."  Tr. at 29.

Plaintiff finished her shift that evening and reported the incident to her female manager (who is also an owner of the business).  Tr. at 9.  The female manager laughed and told her, "I'm sure he was just playing around with you. Don't get so defensive."  Tr. at 9.  The very next day, Plaintiff was "taken off the schedule."  Tr. at 10.  "Taken off the schedule" means that Defendant took away Plaintiff's title and position as bar manager and demoted her to part-time wait staff (which she had never done before). Tr. at 16.[2]

Plaintiff texted her female manager to ask what she had done wrong. Tr. at 10. The manager replied that she had done absolutely nothing wrong and that the manager who had groped her asked that Plaintiff be pulled off the schedule.  *Id.* Plaintiff asked if she was being pulled off the schedule because of what happened in the beer cooler, and the manager said, "I'm pretty sure, yeah," and apologized.  *Id.*

Plaintiff was emotionally traumatized by the Defendant's sexual harassment severe enough to cause Plaintiff to seek counseling from her pastor and ask for medical assistance from her doctor. Tr. at 11-12. She told her doctor that the events of February 23rd were "emotionally

---

[2] Rather than working five (5) nights a week as a bar manager, Plaintiff was demoted to wait staff, serving tables two (2) days a week. Tr. at 16.

traumatizing". Tr. at 11. Her doctor tried to prescribe Xanax to treat her, but Plaintiff declined the prescription because she did not want to be on any narcotics. *Id.* She sought help from her pastor on a number of occasions for the impact the events had on her relationship with her husband. According to Plaintiff, as a result of the incident whenever her husband tried to touch her, she would "just break down." Tr. at 12. Plaintiff's relationship with her husband had been intimate, but after February 23rd, it was strained. *Id.* Her distress also impacted her parenting:

> [The children] had seen how I was with my husband. I mean, we had a healthy relationship. I mean, I love him with everything, ... and they could see that I wasn't hugging daddy, kissing daddy. We weren't holding hands anymore. I was standoffish. I was quiet. I just wanted to be in my room, in my bed, away from everybody, and they would constantly ask, you know, my two small ones, "What's wrong with mom? What's wrong with mom?"

Tr. at 13.

On May 5th, 2020, Plaintiff returned to work at her former employer's establishment at the same rate of pay that Defendant had paid her. Tr. at 11. Prior to February 23rd, Plaintiff had been an outgoing person. Tr. at 13. But, she is "not that person anymore," although she still gets up and goes to work each day like she has done for 21-years. *Id*. Finally, Plaintiff

6

testified that she felt "robbed" and "defeated" for being fired because the manager groped her.  Tr. at 14.

Plaintiff seeks back pay for lost wages and $5,252.50 in attorneys' fees. Plaintiff also seeks compensatory damages for her emotional distress in an amount that the court deems just and proper.  ECF No. 13 at 10.

## III.    DISCUSSION

### A. Jurisdiction and Venue

The court exercises subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. The parties do not contest personal jurisdiction or venue, and the Court finds that there are allegations sufficient to support both.

### B. Supplemental Jurisdiction Over State Law Claims

Plaintiff's Amended Complaint asserts claims for sexual harassment and hostile work environment under Title VII, 42 U.S.C. § 2000e *et seq*. and under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq*. ECF No. 13 at 6-8. Because Plaintiff brings claims under state law the Court must determine whether it should exercise its supplemental jurisdiction under 28 U.S.C. § 1367, over Plaintiff's claims founded on Florida law.

Section 1367(c) lists specific circumstances in which a district court may decline to exercise supplemental jurisdiction over a state law claim

joined with a claim over which the court has original jurisdiction.  The

district court may refuse to exercise supplemental jurisdiction if, *inter alia*,

the state claim raises a "novel or complex issue of State law" or

"substantially predominates over" the claim of which the Court has original

jurisdiction.  28 U.S.C. § 1367(c)(1) & (2).

Additionally, a district court may decline to exercise jurisdiction over a

state claim if "in exceptional circumstances, there are other compelling

reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4). After examining

the factors listed in Section 1367(c), if the district court "decides that it has

the discretion . . . to decline jurisdiction . . . it should consider the traditional

rationales for pendent jurisdiction, including judicial economy and

convenience, in deciding whether or not to exercise jurisdiction."  *Palmer v.*

*Hosp. Auth. of Fla.,* 22 F.3d 1559, 1569 (11th Cir. 1994).

"Courts considering supplemental jurisdiction in employment

discrimination cases have declined to exercise jurisdiction in cases in which

state claims require different or foreign elements of proof."  *Freytas-Torres*

*v. City of Sanford*, Case No. 6:03cv1732, 2004 U.S. Dist. LEXIS 33117, at

*2 (M.D. Fla. Jun. 1, 2004) (declining to exercise supplemental jurisdiction

over Plaintiff's FRCA claims brought in addition to Title VII sexual

harassment/retaliation claims, and cataloguing cases from other district

courts that had done the same); *see also Wilson v. Hilton Hotels, Corp*., Case No. 6:05cv47, 2005 U.S. Dist. LEXIS 37744 (M.D. Fla. Apr. 4, 2005) (declining to exercise supplemental jurisdiction over Plaintiff's FRCA claims in Title VII action in that "courts in this circuit have hesitated to exercise pendent jurisdiction over state claims that would only serve to introduce jury confusion and delay.") (*citing Bennett v. Southern Marine Mgmt. Co.*, 531 F.Supp. 115, 117-18 (M.D. Fla. 1982)) (quotation omitted).

In *Freytas-Torres*, the court declined to exercise supplemental jurisdiction over Plaintiff's FRCA claims because the claims raised novel and complex questions of state law that substantially pre-dominated over Plaintiff's Title VII claims.  The case also presented "exceptional circumstances" that compelled the Court to decline to exercise supplemental jurisdiction over the FCRA claims under 28 U.S.C. § 1367(c)(4).  2004 U.S. Dist. LEXIS 33117, at *6.

The court, there, reasoned that Title VII and the FRCA are dissimilar with respect to the amounts and types of damages that may be recovered. *Id.* at *3-4. For example, a prevailing plaintiff under Title VII can recover between $50,000 and $300,000 in aggregated compensatory and punitive damages depending on the total number of Defendant employees; whereas, punitive damages are capped at $100,000 under the FRCA but

compensatory damages are not capped at all. *Id*. at \*4.  Also, as the court in *Freytas-Torres* pointed out administrative processes for asserting state and federal claims are different, and the "statutes differ significantly in the claimant's recourse after dismissal." *Id*. at \*5-6 (under Title VII, the complainant may file suit regardless of whether her administrative charge is dismissed or unresolved after 180 days; under FCRA, the complainant may file suit *only* if the administrative charge is unresolved after 180 days, and *not* if the charge is dismissed). For these reasons, the *Freytas-Torres* court declined to exercise supplemental jurisdiction over Plaintiff's FRCA claims. *Id*. at \*6.

The same considerations apply here and counsel towards declining to exercise supplemental jurisdiction. Moreover, Plaintiff did not present any argument in its motion or at the hearing to suggest any other reason why the Court should exercise supplemental jurisdiction over the state law claims in this case. Therefore, consistent with the reasoning in *Freytas-Torres* the Court should decline to exercise supplemental jurisdiction over Plaintiff's FRCA claims.  Accordingly, Plaintiff's FRCA claims should be dismissed without prejudice.[3]

---

[3] Under 28 U.S.C. § 1367(d), the limitations period for the FRCA claims asserted would be tolled for a period of 30 days after the date of the Court's Order of Dismissal.

*C. Default Judgment on Plaintiff's Title VII Claims.*

    1.  <u>Legal Standard</u>

Plaintiff's motion is governed by Rule 55 of the Federal Rules of Civil

Procedure. Rule 55(b) provides that default judgment may be entered

against defaulting defendants as follows:

> (1) *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgement for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2) *By the Court*. In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals. . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

A motion for entry of judgment by default is not granted as a matter of

right, and in fact is judicially disfavored. 10A Charles Alan Wright, et al.,

FEDERAL PRACTICE AND PROCEDURE CIVIL §§ 2681, 2685 (3d ed.

1998).  That is why Fed. R. Civ. P. 55(b)(2) vests the court with judicial

discretion in determining whether the judgment should be entered. *Id.* §

2685 at 31.  The ability of the court to exercise its discretion and refuse to

enter a default judgment is made effective by the two requirements in Rule

55(b)(2) that an application must be presented to the court for entry of

judgment and that notice of the application must be sent to the defaulting

party if he has appeared.  *Id.*

      Under Rule 55(b)(2), a party who has appeared in an action, but has

failed to defend, as here, must be given written notice of an application to

the court for entry of judgment by default. 10A *Federal Prac. & Proc.* Civil

3d § 2687 at 50. In this case, Defendant has failed to make any

appearance after its counsel withdrew more than seven months ago.

Nonetheless, Defendant was provided written notice of the Clerk's Default

(ECF No. 25 at 3), written notice of Plaintiff's Motion for Default Judgment

(ECF No. 32 at 5), and written notice of the date and time of the evidentiary

hearing (ECF No. 37 at 2).

      In determining whether to grant a Motion for Default Judgment, the

court's discretion is guided by the following principles:

      First, the court must have personal jurisdiction over the Defendant

and subject-matter jurisdiction over the case. 10A *Federal Prac. &*

*Proc. Civil* 3d § 2682 at 14. In its answer, Defendant admits that this Court

has subject-matter jurisdiction, and that venue is proper. Defendant does not contest personal jurisdiction, which is evident from the face of Plaintiff's Complaint given that Defendant is a Florida corporation and the injuries complained-of occurred in this District.

Second, upon entry of a default judgment, the well-pleaded allegations of the complaint are to be accepted as true, except those relating to legal conclusions and the amount of damages. *Comdayne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations omitted). "While a defaulted defendant is deemed to 'admit[] plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Third, the complaint must state a cause of action. In other words, even after default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." 10A *Federal Prac. & Proc.* Civil 3d § 2688 at 63. The Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to default, actually state a substantive cause of action and that there is a substantive,

sufficient basis in the pleadings for the particular relief sought." *Tyco Fire and Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007).

Fourth, "while the well-pleaded facts alleged in the complaint are deemed admitted on entry of default, plaintiff's conclusions of law are not deemed admitted or established, and the court may grant only the relief for which a sufficient basis is asserted in the complaint." *Patray v. Northwest Publ.,* 931 F.Supp. 865, 869 (S.D. Ga. 1996) (citations omitted); *see also Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not *well pleaded* or to admit conclusions of law") (emphasis in original). In that sense, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Wahl v. McIver,* 773 F.2d 1169, 1172 (11th Cir. 1985) (per curiam) (district court was correct in denying motion for default judgment against county's public defender since the plaintiff's allegations did not state a cause of action against him). "Entry of default judgment is only warranted when there is a 'sufficient basis' for the judgment". *Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (citation omitted). In the Eleventh Circuit, the "sufficient basis" standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* at 1245. "Conceptually, then, a

motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Id.* (citation omitted).

Fifth, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Securities (USA) v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).

Ultimately, "[t]he entry of a default judgment is committed to the discretion of the district court." *Hamm v. Dekalb Cnty.,* 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986) (citations omitted). "[T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10A *Fed. Pract. & Proc.* Civil 3d § 2688 at 60-61 ("[W]hen it seems advantageous, a court may conduct a hearing to determine whether to enter a judgment by default.").

With these principles in mind, the undersigned will evaluate Plaintiff's Title VII claims to determine if a default judgment is warranted.

2. <u>Title VII: Hostile Work Environment Claims</u>

Title VII forbids an employer from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Although Title VII

makes no express reference to sexual harassment, the courts have long recognized that the statutory language, "terms, conditions, privileges of employment," includes within its scope a "discriminatorily hostile or abusive environment." *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d (1993) and *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1949)) (other citation omitted). "An employer 'is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.' The employer will be strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim." *Miller v. Kenworth*, 277 F.3d 1269, 1278 (11th Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998)).

To establish a *prima facie* case of hostile work environment sexual harassment, a plaintiff must show:

> (1) that she belongs to a protected group; (2) that she has been
> subject to unwelcome sexual harassment; (3) that the
> harassment was based on her sex; (4) that the harassment
> "was sufficiently severe or pervasive to alter the terms and
> conditions of her employment and create a discriminatorily
> abusive working environment"; and (5) a basis for holding the
> employer liable.

*Watson v. Blue Circle, Inc*., 324 F.3d 1252, 1257 (11th Cir. 2003) (*citing* and quoting *Mendoza,* 195 F.3d at 1245).  To establish that conduct is so severe such as to alter the terms and conditions of employment, a plaintiff must establish both subjective and objective components*.  See Miller*, 277 F.3d at 1276. The subjective component is met when "the complaining employee perceived it to be [severe or pervasive] at the time" of the harassment*.  Husley v. Pride Rests., LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (*citing Faragher*, 524 U.S. at 787, 118 S.Ct, at 2283 and *Mendoza*, 195 F.3d at 1246).  In evaluating the objective component of this severe-or-pervasive prong, the court examines whether the actions of the employer altered the employee's working conditions to such an extent that a reasonable person would find the atmosphere hostile and abusive*.  Harris*, 510 U.S. at 22-23, 114 S.Ct. at 371, 126 L.Ed.2d 295. The objective prong "is somewhat fact intensive."  *Mendoza*, 195 F.3d at 1246.

To determine whether the complained-of statements and conduct are sufficiently severe or pervasive from an objective standpoint to alter the terms and conditions of employment, courts consider the following four factors:

> (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Miller*, 277 F.3d at 1276.  These four factors are used to "delineate a

minimum level of severity or pervasiveness necessary for harassing

conduct to constitute discrimination in violation of Title VII." *Mendoza*, 195

F.3d at 1246. No single factor is controlling or required.  *Harris*, 510 U.S. at

23, 114 S.Ct. at 371, 126 L.Ed.2d 295. Instead, a court must "look[] to the

totality of the circumstances to determine whether harassment is

sufficiently severe or pervasive to alter the conditions of the plaintiff's

employment and create an abusive working environment."  *Mendoza*, 195

F.3d at 1258. These inquiries ensure that Title VII does not become "a

general civility code."  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S.

75, 81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). "When a plaintiff

proves that a tangible employment action resulted from a refusal to submit

to a supervisor's sexual demands, he or she establishes that the

employment decision itself constitutes a change in the terms and conditions

of employment that is actionable under Title VII."  *Burlington Indus. v.*

*Ellerth,* 524 U.S. 742, 753-54, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633

(1998).

In this case, Plaintiff has successfully demonstrated that she is a

member of a protected class, that she was subjected to unwanted sexual

harassment, and that the harassment was based on sex.

The Court also concludes that Plaintiff has satisfied the subjective component based upon her testimony concerning the outrage and humiliation she experienced after the sexual harassment by her supervisor and owner of the business.  The testimony further established that Plaintiff suffered loss of employment, loss of income, and emotional pain and suffering as a result of Defendant's conduct.  Notably, Plaintiff testified that the emotional distress caused by Defendant's unwanted sexual physical contact required her to seek both medical and pastoral care. *See Husley*, 367 F.3d at 1248 (concluding that plaintiff found employer's behavior subjectively severe where she testified that the harassment caused emotional distress; thereby reversing the district court's grant of summary judgment for Defendant employer).

Plaintiff has also satisfied the objective component as well.  Plaintiff testified that she was subjected to constant sexual remarks concerning her appearance including specific directives that she needed to show more cleavage and that she would be required to wear "black chaps" at work so "everyone could see her behind." The co-worker, who testified at the evidentiary hearing, confirmed that other female employees of Defendant were regularly subjected to "nasty" sexual comments. In addition to enduring constant offensive sexual remarks, Plaintiff was groped while she

was at work, causing her emotional trauma. *See Dar Dar v. Associated Outdoor Club, Inc*., 201 Fed. App'x 718, 721-22 (11th Cir. 2006) (noting that district court found allegations that plaintiff was repeatedly touched on her buttocks by co-workers sufficient to raise a genuine issue of material fact for trial on her hostile work environment claim). Lastly, Plaintiff's testimony demonstrated that the sexual harassment she endured unreasonably interfered with her duties as bar manage and resulted in her losing her job.

Accordingly, based upon the testimony presented Plaintiff is entitled to a default judgment on her Title VII hostile work environment claim.

### 3. Title VII: Retaliation Claims

Under the anti-retaliation clause of Title VII, it is an unlawful employment practice "for an employer to discriminate against any of his employees. . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title." 42 U.S.C. § 2000e-3. To establish a *prima facie* case for a retaliation claim, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the two events. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir.

2010) (citations omitted)*; see also Johnson v. Booker T. Washington Broad Serv.,* 234 F.3d 501, 507 (11th Cir. 2000) (*citing Holifield v. Reno*, 115 F.3d 1555, 1556 (11th Cir. 1997) (per curiam)).

A plaintiff "need not prove the underlying claim of discrimination that led to her protest…. Instead, an employee's opposition to discrimination is protected if she could reasonably form a good faith belief that the discrimination in fact existed." *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989) (internal citations omitted); *see also Standard v. A.B.E.L. Servs*., *Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998) ("[T]o satisfy the first element, it is sufficient that an employee have a good faith, objectively reasonable belief that [her] protected activity is protected by statute."). "Protected activities include the filing of a formal complaint, the voicing informally of a complaint to superiors, or the use of the employer's internal grievance procedure to report alleged discrimination." *Bolton v. Baldwin Cty. Pub. Schs*., 627 Fed. App'x 800, 802 (11th Cir. 2015) (per curiam) (citation omitted).

As for the second element, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Alvarez v. Royal Atl. Developers, Inc*., 610 F.3d 1253, 1268 (11th Cir. 2010) (quoting *Burlington N. & Sante Fe Ry. Co.*

*v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (quotation marks omitted)); "'[P]etty slights, minor annoyances, and simple lack of good manners' generally do not rise to the level of materially adverse actions." *Reeves v. DSI Sec. Servs., Inc*., 395 Fed. App'x 544, 547 (11th Cir. 2010) (quoting *Burlington N*., 548 U.S. at 68, 126 S.Ct. at 2415).

To satisfy the third prong, Plaintiff is only required to show that the "protected activity and the adverse action were not *wholly unrelated*." *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (emphasis in original). "[A] plaintiff satisfies this element if [s]he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse action." *Id*. (*citing Farley v. Nationwide Mut. Ins. Co*., 197 F.3d 1322, 1337 (11th Cir. 1999) (citations and internal quotation marks omitted).

 After a plaintiff satisfies her *prima facie* case, if the employer offers a legitimate, non-discriminatory reason for the adverse action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation.  *Holifield*, 115 F.3d at 1566.

At the evidentiary hearing, Plaintiff testified that on the day her supervisor inappropriately grabbed her breast while she was working, she

reported the assault to her female manager.  Both the supervisor, who grabbed her breast, and the manager to whom she reported the incident, were owners of the bar.  The very next day after reporting the assault Plaintiff was demoted from full-time bar manager to part-time wait staff. Plaintiff was told that her demotion was based upon the request of the manager who groped her.

Accordingly, Plaintiff has sufficiently established all of the elements of a retaliation claim. She engaged in protected activity when she reported the assault and she suffered an adverse employment action when she was demoted the same day she reported the assault.  Plaintiff is, therefore, entitled to a default judgment on her Title VII retaliation claim.

Having determined that a default judgment is proper against Defendant on Plaintiff's Title VII claims, the Court must determine the amount and character of the damages to be awarded.

4.  Damages: Title VII Prevailing Party

"It is a proper exercise of judicial power for a court upon default, by taking evidence when necessary. . . to fix the amount which the prevailing party is lawfully entitled to recover and then give judgment accordingly." *Patray v. Northwest Publ.*, 931 F.Supp. 865, 869-70 (S.D. Ga. 1996) (citation omitted). The court "has considerable latitude in determining the

amount of the damages." *Id.* at 870. "However, a plaintiff 'cannot satisfy the

certainty amount simply by requesting a specific amount. [S]he must also

establish that the amount is reasonable under the circumstances.'" *Id.* at

869 (citations omitted*); see also Wright v. Holifield*, 2012 U.S. Dist. LEXIS

167608, 2012 WL 5933032, at *2 (S.D. Ala. November 26, 2012) ("The law

is clear, however, that [the defendant's] failure to appear and the clerk's

entry of default do not automatically entitle [the plaintiff] to a default

judgment in the requested (or any) amount.").

"Damages may be awarded only if the record adequately reflects the

basis for award via 'a hearing or a demonstration by detailed affidavits

establishing the necessary facts.'*" Adolph Coors Co. v. Movement Against

Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (citation

omitted). Having conducted an evidentiary hearing on damages, the Court

will apply these guidelines to the Plaintiff's request for back pay,

compensatory damages, and attorney's fees.

"[A] Title VII plaintiff is entitled to recover for the economic loss due to

his or her wrongful termination." *Price v. Greenman Techs. of Ga.*, Inc.,

Case No. 5:05-cv-471, 2007 U.S. Dist. LEXIS 68917, 2007 WL 2746661, at

*3 (M.D. Ga. Sept. 18, 2007) (*citing* 42 U.S.C. § 2000e-5(g)(1)) (awarding

back pay damages, compensatory damages, and attorney's fees on a

motion for default judgment in a race-based discrimination case); *see also*

*Alger v. Prime Rest. Mgmt.*, LLC, Case No. 1:15cv567, 2016 U.S. Dist.

LEXIS 90483 (N.D. Ga. Jul. 13, 2016) (adopting Magistrate Judge's Report

and Recommendation awarding back pay, compensatory damages and

attorney's fees on a motion for default judgment in a pregnancy-

discrimination case).

    An award of back-pay is the rule, not the exception.  *Hinston v.*

*Webster Indus.,* Case No. 2:05cv971, 2006 U.S. Dist. LEXIS 58121, at *14

(M.D. Ala. Aug. 17, 2006). "Under Title VII, victims of employment

discrimination are entitled to reasonable damages that would make the

plaintiff whole for injuries suffered on account of unlawful employment

discrimination."  *Villalta v. JS Barkats, PLLC*, Case No. 16-cv-2772, 2021

U.S. Dist. LEXIS 75071 at *30-31, 2021 WL 2458699 (S.D.N.Y. Apr. 16,

2021) (citations omitted). Such damages may include compensation for

economic loss and for pain and suffering. *Id.* at *30-31. Damages for

emotional distress are capped by statute according to the number of

Defendant company's employees.  42 U.S.C. § 1981a.

    a. <u>Back Pay Damages</u>

    Plaintiff seeks back pay damages for the time she was without work

after she was demoted by Defendant and taken off the full-time work

schedule. Back pay is calculated by taking the employee's rate of pay at discharge and applying it to the amount of time she was unable to secure other, or adequate employment, without taking into account any taxes, unemployment benefits or social security benefits. *Alger v. Prime Rest. Mgmt., LLC*, Case No. 1:15-cv-567, 2016 U.S. Dist. LEXIS 90877, at *14-15 (N.D. Ga. Jun. 9, 2016).

Plaintiff's last day of employment at Defendant's bar was on February 23, 2020. Plaintiff testified that she could not find any work until May 5, 2020, when she returned to work with her former employer. According to Plaintiff's testimony, she earned approximately $1,500 per week working for Defendant as the bar manager. Therefore, for the ten weeks Plaintiff was out of work, she is entitled to back pay in the amount of $15,000.

b. <u>Damages for Emotional Distress</u>

Plaintiff also seeks compensatory damages for emotional distress. A Title VII plaintiff can recover compensatory damages where the defendant "engaged in unlawful intentional discrimination." 42 U.S.C. § 1981a(a)(1). Compensatory damages include damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." 42 U.S.C. § 1981a(b)(3). Compensatory damages also cover "humiliation and

emotional distress." *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) (*citing Carey v. Piphus*, 435 U.S. 247, 263-64 & n.20, 98 S.Ct 1042, 1052-53 & n.20, 55 L.Ed.2d 252 (1978)).

Plaintiff and her co-worker credibly testified about Plaintiff's change in demeanor after the unwanted physical sexual contact, and the negative impact it had on her relationship with her husband.  Plaintiff further testified that she sought treatment for depression and anxiety from her doctor, and that she sought pastoral care from her minister many times to help her cope with the emotional damage that had been done to her and her marriage.  Plaintiff described in detail that her ability to parent her children was negatively impacted. She did not want to get out of bed some mornings and observed many times that her children were impacted by her change in behavior toward her husband.  Plaintiff also described the distress she experienced after losing her job. Although Plaintiff did nothing to provoke the advances by the manager-owner she became the victim of the unwanted physical sexual contact by the manager-owner. Even at the hearing—eighteen months later—the Court observed that Plaintiff was still tearful when recounting the events of February 23, 2020.

"[T]he district court has a great deal of discretion in deciding the level of damages to be awarded." *Stallworth*, 777 F.2d at 1435.  Compensatory

damages, however, are capped under Title VII at $50,000 in actions, as here, brought against employers with "more than 14 and fewer than 101 employees." 42 U.S.C. § 1981a(b)(3)(A). Although Plaintiff did not provide any evidence at the evidentiary hearing concerning the number of employees who worked at the bar, in Defendant's answer, filed by counsel before he withdrew, Defendant affirmatively averred that it had more than 14 and fewer than 101 employees. ECF No. 10-1 at 13. Plaintiff did not contest this allegation, nor did she testify otherwise. Therefore, under Section 1981a, Plaintiff is entitled to a maximum award of $50,000 in compensatory damages. 42 U.S.C. § 1981a(b)(3)(A).

The Court concludes based upon the evidence presented that an award of $50,000 for compensatory damages is appropriate in this case and is consistent with the level of emotional damage Plaintiff incurred as a result of the unwelcome sexual assault by the manager-owner and the resulting loss of her job after she complained about the assault.

c. Title VII Prevailing Party Attorney's Fees

Plaintiff also seeks $5,252.50 in attorneys' fees, which the Court finds reasonable for the reasons discussed below.

Title VII of the Civil Rights Act of 1964 allows the prevailing party to receive from the loser a reasonable attorney's fee in addition to other relief. The statute provides:

> In any action or proceeding under… [Title VII] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

> 42 U.S.C. § 2000e-5(k) (1976).

In determining the reasonableness of the attorney's fees, the court is guided by well-established principles.  In the Eleventh Circuit, the court employs the federal lodestar approach to set reasonable attorney's fees. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). The lodestar formula is summarized as follows:

> First, the court must determine the attorney's reasonable hourly rate.  Next, the court takes the reasonable hourly rate and multiplies it by the reasonable number of compensable hours. With respect to the reasonable hourly rate, the applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  In calculating what hours were reasonably spent on the litigation, exclusions for unnecessary or excessive time expended is left to the discretion of the court.  The court should exclude excessive, unnecessary, and redundant hours.  The fee applicant bears the burden of establishing entitlement and

> documenting the appropriate hours. . . and objections thereto
> must be equally specific and precise.

*See*, *Smith v. Psychiatric Solutions, Inc.,* Case No. 3:18cv3, 2008 U.S. Dist.
LEXIS 78166, at \*19-21 (N.D. Fla. Sept. 12, 2008) (internal citations and
quotations omitted), *aff'd* 358 Fed. Appx. 76, 2009, 2009 U.S. App. LEXIS
28140 (11th Cir. Dec. 21, 2009).

Plaintiff requests attorneys' fees for counsel and co-counsel at an
hourly rate of $350 based upon counsel's twenty-years of experience
handling employment discrimination cases.  The Court finds, based upon
the Court's experience in Title Vii discrimination cases and the Court's
familiarity with the hourly rates of attorneys in the North Central Florida
legal market, that $350/hour is a reasonable hourly rate for a lawyer with
20-years' experience.

The Court also has reviewed the itemized list of services Plaintiff's
counsel provided in this case, as detailed in the Amended Declaration of
Jay E. Romano. ECF No. 44. As evidenced in the Amended Declaration,
Plaintiff's counsel spent 12.15 hours representing Plaintiff in this case. The
Court concludes that the requested time and services are reasonable and
necessary and do not include any duplicative hours.  Accordingly, Plaintiff

is entitled to an award of attorney's fees in the sum of $4,252.50,

representing 12.15 hours at $350 per hour.

Plaintiff also seeks $1,000 (reduced rate) for co-counsel's

representation of Plaintiff at the evidentiary hearing. The Court finds this

amount is more than reasonable particularly in view of the fact that the

request for $1000 is less than the attorney's fees would be for spending 5.5

hours at $350 per hour.

Accordingly, Plaintiff is entitled to a total award for attorney's fees in

the sum $5,252.50 as the prevailing party in this Title VII case.

## IV.    CONCLUSION

For the reasons discussed above it is respectfully **RECOMMENDED**:

1.  Plaintiff's Motion for Final Judgment, ECF No. 32, should be
**GRANTED** on Plaintiff's Title VII claims but the Court should decline to
exercise supplemental jurisdiction over Plaintiff's FRCA claims and,
therefore, dismiss these claims without prejudice.

2.    Final Default Judgment should be entered in favor of Plaintiff and
against Defendant in the total sum of $70,252.50, representing back pay in
the amount of $15,000, compensatory damages in the amount of $50,000[4]

---

[4] The Court also concludes that the award of $50,000 for compensatory damages
resulting from the mental anguish and emotional damages Plaintiff incurred, would be
an appropriate award even if there was no cap on compensatory damages. Therefore,
even if the Court did not decline to exercise supplemental jurisdiction over Plaintiff's
FRCA claims, Plaintiff would only be entitled to compensatory damages under the
FRCA in the amount of $50,000.

and $5,252.50 for attorneys' fees under Title VII as the prevailing party.

**IN CHAMBERS** this 26th day of August 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.